## J. F. NUGENT, Appellant, v. C. H. DILWORTH, Treasurer.

**Taxation:** EXEMPTION FOR RELIGIOUS PURPOSES. A pastor, having purchased lots with the express purpose of building a church thereon, subsequently secured a more desirable location, where he erected the church, paying for it with money secured by a mortgage on the lots first purchased. *Held*, that the mortgaged lots were not exempt under Code, section 797, providing that property devoted solely to religious purposes, "and not leased or otherwise used with a view to pecuniary profit," shall be exempt from taxation.

SAME: PRACTICE. Under Code, section 797, exempting from taxation property devoted solely to religious purposes, on condition that the deed to such property shall previously have been recorded, one who seeks to restrain the sale of church property for taxes must allege and prove that the deeds thereto have been recorded.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

FRIDAY, MAY 24, 1895.

The petition shows that the plaintiff is pastor of the East Side Catholic Church in the city of Des Moines, commonly known as the "Church of the Visitation;" that in 1882 he purchased some lots in the city of Des Moines, with the express view and intention of erecting thereon, except on lot 1, a church edifice for the use of the East Side congregation, and of erecting on the other lot a school or pastor's residence for the use of said congregation; that subsequently a more desirable location was secured for the church edifice; and it was erected thereon, but that no parochial residence has been erected; that the part of the lots designed for a church edifice has been mortgaged to secure five thousand dollars, and the other lot to secure two thousand five hundred dollars, and that all of the

money so secured has been used in the erection of the present church edifice, and in defraying the expenses thereof; that in the purchase of all of said property plaintiff acted for and with the advice and consent of the congregation, and used for said purchase tne moneys and credits of said congregation; that he has, and claims to have, no pecuniary interest in said property, or any part thereof; that said property is not the source of any revenue to plaintiff nor to the congregation, and is held wholly exclusive for church purposes; that it is now the intent and the purpose of plaintiff and said congregation to dispose of said property, and to concentrate the balance thereof towards paying for and completing the present church edifice, and that every reasonable effort is being made by plaintiff and said congregation to that end. It also appears from the petition that the lots have been sold for the taxes of 1892, and that the defendant is about to issue deeds therefor to the purchasers, and this action is to restrain them from so doing, because the property is exempt from taxation under the laws of the state. To the petition there was a general demurrer, which the court sustained, and from the ruling the plaintiff appealed.— *Affirmed.*

*Nugent & Connelly* for appellant.

*W. G. Harvison* for appellee.

Granger, J.—I. There is a claim that the case cannot be considered in this court, because there is no showing, after the ruling on the demurrer, of an election to stand on the petition. By an interlineation in the abstract it appears that such an election was made. It is likely the amendment was not put in all the copies, which has led to the claim as made in argument.

II.   The law makes exemptions from taxation, and that on which the exemption is claimed in this case is as follows: "All     *     *     *     grounds and buildings of     *     *     *     religious institutions, and societies devoted solely to the appropriate objects of these institutions,     *     *     *     and not leased or otherwise used with a view to pecuniary profit; provided, that all deeds by which such property is held shall be duly filed for record before the property therein described shall be omitted from the assessment." Code, section 797.  It will be seen from the proviso that a condition of exemption is "that all deeds by which such property is held shall be duly filed for record before the property therein described shall be omitted from the assessment." The petition is silent on this subject, and appellee urges that such fact is fatal to the petition.  It is generally, if not universally, expressed that taxation is the rule, and exemption the exception.  Exceptions, to be available in legal procedure, must be pleaded and proven.  If appellant is to come within the rule of exemption from taxation, he must meet its conditions; and one of them is that the title deed by which he holds the property shall be filed for record before there can be exemption.  There are no legal presumptions in his favor in this respect, and the fact should be made to appear.  We think, as claimed by appellee, that the absence of the averment is fatal to the petition.

III.   It is, perhaps, advisable that we should dispose not of the case on the holding in the foregoing division of the opinion, but deal with a more important one, touching its merits, and that is whether or not the admitted facts bring this property within the rule of exemptions.  To come within the provisions of the law, the lots must be devoted solely to the appropriate objects of the church, and not

be leased or otherwise used with a view to pecuniary profit. We are, then, to inquire how these lots are devoted to the use of the church. It is said, that they were purchased with a view to place thereon church edifices, but that, not being desirable, other lots were secured, and these lots changed, so far as practicable, into new property, by way of mortgage; and that it is now the purpose and intent to put all the equity in said mortgaged property into the newly-acquired lands. There is no other claim that the property is devoted to the object of the church. The claim, under the averments of the petition, amounts to this: that the money for which the lots are pledged has been used for the erection on other lots, and that it is the intention to use any equity that there may be for the same purpose. The money realized from the pledge of the lots is or was distinct from the lots, and before it became merged in the edifice, devoted to the objects of the church, it was assessable as well as the lots pledged for its payment. When the money was invested in the edifice, it, as invested, became exempt; for it, and not the lots pledged, is devoted to church purposes. The law means *directly*, not indirectly, devoted to such a purpose. Let us assume, by way of illustrating the situation, that the money secured from the pledge is not yet invested, but in the hands of plaintiff. Nothing is now devoted to church purposes. Both the lots and the money are now assessable. The plaintiff invests the money in an edifice, and devotes it to religious purposes. That move has taken the money, or the property that stands for it, out of the list of assessable property, but it has made no change with the lots. That is the kind of devotion the law contemplates. It means that the property is to be used in the way of occupancy for the appropriate objects of the institution or church, and not as the means of securing funds

for the erection of a church. The lots have been used as a means of placing other property where it is devoted to the objects of the church within the meaning of the law, and certainly no greater exemption can be claimed than of the property thus placed. It will be seen, by referring to the section cited, that it would not permit the plaintiff to lease or otherwise use these lots with a view to obtain money for their use, even though the money should be used for the appropriate objects of the church; or, in other words, the church could not use them for pecuniary profit, and apply the profits to its appropriate object, and claim the exemption. The devotion to the objects of the church, within the meaning of the law, is limited, and not general. Appellant relies on *Trustees of the Wesleyan Academy v. Inhabitants of Wilbraham*, 99 Mass. 599. The case seems to be in line with our reasoning. The laws of that state permit exemptions in favor of educational institutions. The scientific institution owned land on which its buildings were erected, and, among them, a large boarding house. The farm for which exemption was claimed was one hundred and fifty acres. The trustees cultivated the farm, keeping thereon cows to furnish milk for the boarding house, and supplying it with vegetables and other provisions. The farm was held exempt. But how different the cases. That was an educational institution, one of the objects of which was to furnish a boarding house for its students, and enable them to have cheap board, and the farm was devoted to that object, and nothing else. It was made to do a service in the conduct of the institution day by day. We think the case is strong in support of our holding. In fact, we know of no case against it. There have been some decisions in this state on the subject, but none with facts so similar as to be controlling. In so far as they bear on the point involved in this case, they favor our conclusion. See *Griswold College v.*

*State,* 46 Iowa, 275; *Kirk v. St. Thomas Church,* 70 Iowa, 287, 30 N. W. Rep. 569; *Mulroy v. Churchman,* 60 Iowa, 717, 15 N. W. Rep. 583. The judgment is *affirmed.*